IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| RICHARD MARTIN, | ) | CASE NO. 1:09 CV 378 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| RICHARD HALL, Warden, | ) | |
| | ) | |
| Respondent. | ) | **REPORT & RECOMMENDATION** |

Introduction ...................................................... -2-

Facts ............................................................. -3-
    A.    Underlying facts ............................................. -3-
    B.    Trial, conviction and sentence ................................. -4-
    C.    Direct appeal ............................................... -6-
        1.    *The Ohio court of appeals* ............................. -6-
        2.    *The Supreme Court of Ohio* ........................... -8-
    D.    Federal habeas proceedings .................................. -10-
        1.    *The petition* ....................................... -10-
        2.    *The State's return of the writ* .......................... -13-
        3.    *Martin's traverse* ................................... -15-

Analysis .......................................................... -16-
    A.    Initial observations and recommendations ...................... -16-
        1.    *Jurisdiction* ....................................... -16-
        2.    *Appointment of counsel/evidentiary hearing* ............... -17-
    B.    Standards of review ......................................... -19-
        1.    *AEDPA standard* ................................... -19-
        2.    *Procedural default standard* ........................... -20-
    C.    Application of standards ...................................... -23-
        1.    *Non-cognizable/otherwise non-reviewable claims* ........... -23-
            *a.    The four search warrant claims should be dismissed as non-
                reviewable under Stone v. Powell.* ................. -24-
            *b.    Non-cognizable state-law claim* ................. -29-
            *c.    Procedurally defaulted claims* ................... -31-

       d.      *Ground Five – insufficiency of the evidence – should be denied* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -36-

       e.      *Ground Seven – alleging destruction of evidence – should be denied* . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -40-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -43-

# Introduction

Before me by referral[1] is Richard Martin's *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2254.[2]  Martin is currently incarcerated at the Richland Correctional Institution in Mansfield, Ohio, where he is serving a total concurrent sentence of eight years in prison.[3]  The sentences were imposed after Martin's conviction in 2006 at a jury trial in Cuyahoga County on two counts of possession of marijuana, two counts of drug trafficking, and one count of possession of criminal tools.[4]

In the petition, Martin asserts ten grounds for habeas relief,[5] which will be detailed below.  He also requests an evidentiary hearing and appointment of counsel.[6]  The State in its return of the writ contends that:  (a) some grounds for relief should be dismissed as non-cognizable or otherwise non-reviewable by a federal habeas court; (b) other grounds

---

[1] *See*, non-document order of referral under Local Rule 72.2 filed April 1, 2009.

[2] ECF # 1.

[3] *Id.*

[4] *Id.*

[5] *Id.*, Addendum at 14-25.

[6] *See*, *id.* at 26.

should be dismissed as procedurally defaulted; and (c) the remaining grounds should be denied as without merit.[7]  It also argues that no evidentiary hearing is needed.[8]  Martin has filed a traverse.[9]

For the reasons that follow, I will initially recommend finding the State's positions on the various grounds for relief to be correct, and thus that Martin's petition for habeas relief should accordingly be dismissed in part and denied in part.  I will also recommend that his motions for appointment of counsel and an evidentiary hearing be denied.

## Facts

### A.    Underlying facts

The facts of the underlying offense here were set out by the state appeals court[10] as follows:

> Detectives of the Southeast Area Law Enforcement ("SEALE") Task Force received numerous phone calls from an informant telling them that a residence on Gardenview in Maple Heights was being used as a "stash house" for large quantities of marijuana.  The informant had direct knowledge of the operation and was able to provide detectives with the name of the owner of the house, Tajmahal Frazer ("Frazer"), and specific details regarding Frazer's travel to New York.  Based on the information the informant gave police, SEALE was able to verify one of Frazer's travel dates with a local airline.

---

[7] ECF # 5 at 9-33.

[8] *Id*. at 1.

[9] ECF # 8.

[10] Facts found by the state appeals court in its review of the record are presumed correct by the federal habeas court.  28 U.S.C. § 2254(e)(1); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

SEALE performed two trash pulls at the Gardenview house and discovered a boarding pass for the exact flight the informant detailed, small amounts of marijuana, and material commonly used in preparing marijuana for sale, including latex gloves, plastic freezer bags, and air fresheners. Detectives also found mail addressed to Frazer at other addresses, which upon investigation were vacant houses. Detectives developed a theory that Frazer was having marijuana shipped to him at the other addresses, and then picking up the packages and taking them to Gardenview for repackaging.

SEALE obtained a search warrant for the Gardenview house. Before the search warrant was executed, detectives in unmarked cars conducted a surveillance of the house. They observed a male backing a red truck into the driveway and loading a box into the truck. The truck left and detectives called dispatch to request that a marked police car stop the truck. The truck was being driven by co-defendant Dexter Jordan ("Jordan"), but police later discovered that [defendant Richard] Martin owned the truck. Jordan signed a written consent for police to search the truck. Police found two boxes of marijuana, including the box which detectives had observed being loaded into the truck at Frazer's house.

After Jordan's arrest, police returned to Frazer's house and waited for the SWAT team. When the team arrived, police knocked and announced their presence. They forced entry into the house when no one answered. Police discovered a "workshop" in the basement with several tables containing large blocks of compressed marijuana in various stages of being "broken down" and repackaged. Police found two scales and dozens of gallon freezer bags, many containing marijuana and one bag containing "shake," or parts of marijuana that dealers discard. Police also discovered a gun in the master bedroom.

Both Martin and Frazer were in the basement when police arrived. Martin was wearing latex gloves.[11]

## B.    Trial, conviction and sentence

Based on the facts related above, in 2006 Martin was charged with two counts of

possession of marijuana, two counts of trafficking in marijuana, and one count of possession

---

[11] ECF # 5, Attachment (state court record) at 195-97 (decision of the Ohio appeals court).

of criminal tools.[12]  Each of the possession and trafficking counts were accompanied by a firearm specification.[13]  Upon arraignment, Martin, with retained counsel, entered a plea of not guilty to all charges.[14]

Prior to trial, Martin, through the same retained counsel, then moved to suppress all evidence obtained in the police search of the Gardenview Drive home.[15]  The State responded in opposition.[16]  The trial court thereupon conducted a hearing on the motion and then denied it.[17]

The matter then proceeded to a jury trial.  At the conclusion of the State's case, the trial court granted Martin's Rule 29 motion for acquittal on the firearm specifications connected to counts one and two.[18]  At the conclusion of the case, the jury returned guilty verdicts against Martin on all drug possession and trafficking charges, and the charge of possessing criminal tools, but found him not guilty as to the remaining firearm

---

[12] *Id.* at 195.

[13] *Id.*

[14] *Id*. at 3.

[15] *Id*. at 4-11.

[16] *Id*. at 15-20.  The State also filed a supplemental brief in support of its opposition to the motion to suppress.  *Id*. at 21-27.

[17] *Id*. at 28.

[18] *Id*. at 29.  These counts of drug possession and trafficking related to amounts of marijuana from 5 to 20,000 grams; the other counts of possession and trafficking concerned amounts of marijuana greater than 20,000 grams.

specifications.[19]  The trial court sentenced Martin to concurrent sentences of:  (1) five years in prison for the drug possession and trafficking offenses involving 5 to 20,000 grams of marijuana; (2) eight years for the possession and trafficking offenses involving more than 20,000 grams of marijuana; and (3) one year for possession of criminal tools.[20]

## C.    Direct appeal

### 1.    *The Ohio court of appeals*

Following his conviction and sentence, Martin, now represented by new appointed counsel, timely filed a notice of appeal with the state appellate court.[21]  In his brief in support, Martin, here represented by yet another new attorney,[22] raised the following three assignments of error:

> 1.    Given Rule 12(F) does not give a trial court any discretion, it follows that the Court erred, and in the wake thereof, the accused was denied a fair trial, when the Court failed, or simply refused, to set its essential findings on the record when denying the defendant's motion to suppress.
>
> 2.    The Court erred when it denied the defendant's motion to suppress.

---

[19] *Id*. at 30, 32.

[20] *Id*. at 31.

[21] *Id*. at 33.  Martin was sentenced on November 2, 2006 and filed the notice of appeal November 18, 2006.

[22] Joseph Pagano, who was appointed at sentencing to represent Martin on appeal, filed the notice of appeal, while James Willis filed the merit brief for Martin on appeal.  *See*, *id.* at 34 (notice); 36 (brief).

3.      Due process is denied if findings of fact not made are artificially imputed to the trial judge and the appeal resolved on that basis.[23]

Martin, *pro se*, then submitted a supplemental brief in which he raised eight additional assignments of error:[24]

1.      Whether, and in recognition of the maxim that "a court of record speaks only through its journal," an unfiled and non-journalized search warrant is lawfully enforceable and constitutionally valid.

2.      Whether defendant was deprived of both due process of law and a fundamentally fair trial where he was convicted of possession of drugs involving circumstances to which he was clearly not a party.

3.      Whether defendant was deprived of a fundamentally fair trial where the drugs in question were only partially tested.

4.      Whether the defendant's conviction for possession of drugs is constitutionally sound where police and/or prosecutorial misconduct resulted in the loss or destruction of exculpatory and/or potentially exculpatory evidence.

5.      Whether the defendant's sentence is "contrary to law" and therein violative of the State and Federal Constitution's prohibition against Ex Post Facto/Retroactive laws.

6.      Whether "journal activities" evident in the record in relations (sic) to defendant's "binary and ex parte sentencing procedures" render the resulting attempted sentence void ab initio.

7.      Whether a "prejudicial joinder" at trial violated the defendant's right to a fair trial where evidence generated against his co-defendant inherently affected the jury's ability to compartmentalize the resulting prejudice.

---

[23] *Id*. at  38.

[24] The appeals court accepted the submission, combining Martin's *pro se* assignments of error with those raised by counsel.  *Id*. at 197.

8.      Whether defendant was deprived of his Sixth Amendment right to effective assistance of counsel.[25]

The State filed a brief in opposition to both the assignments of error propounded by counsel and those submitted *pro se* by Martin,[26] to which Martin, through counsel, filed a reply.[27]  The Ohio court of appeals, after combining the briefs of Martin and his counsel, then overruled all eleven assignments of error, affirming the judgment of the trial court.[28]

## 2.      *The Supreme Court of Ohio*

Following the decision of the Ohio appellate court, Martin, *pro se*, timely filed a notice of appeal with the Supreme Court of Ohio.[29]   In his memorandum in support of jurisdiction, Martin advanced the following ten propositions of law:

1.      It is a denial of due process therein depriving defendant of a fundamentally fair trial where a trial court fails or refuses to make essential findings of fact in denying a defendant's good faith motion to suppress evidence.  *See*:  *United States v. Cortina*, 630 F.2d 1207, at 1213.

2.      Due process is offended and fundamental fairness implicated where, and under the circumstances of this case, the trial court denied defendant's motion to suppress.  *See*:  *McDonald v. United States*, 355 U.S. 850 (1978); and *United States v. Alexander*, 740 F.Supp. 437 (N.D. Ohio 1993).

3.      Due process rights are prejudicially implicated where required findings of fact 'not made' are artificially imputed to the trial judge and the appeal revolves

---

[25] *Id*. at 100-101.

[26] *Id*. at 149-178.

[27] *Id*. at 179-192

[28] *Id*. at 193-215.

[29] *Id.* at 216-217.  The appellate decision was journalized on November 26, 2007, and Martin filed his notice of appeal with the Supreme Court of Ohio on December 10, 2007.

(sic) on that basis.  *See*:  *United States v. King*, 277 F.2d (sic) 732 (6th Cir. 2000); and *United States v. Lewis*, 231 F.2d (sic) 238 (6th Cir. 2000).

4.  It is a manifest violation of due process and deprives fundamental fairness where a foundational search warrant was un-filed and non-journalized prior to its execution.  *See*:  *Hollingsworth v. Barbour* (US), 4 Pet. 466, 7 L.Ed. 922; and *Tari v. State*, 117 Ohio St. 481.

5.  It is violative of the due process clause and offends basic fairness to convict any person of [a] crime to which said person was clearly not a party or principle (sic) in a possession of drugs case.

6.  Due process and fundamental fairness rights are prejudicially implicated where, as here, a large amount of drugs were confiscated from two different locations however a mere fraction of the drugs confiscated from one location were (sic) randomly tested. *See:  Daubert v. Merrill Dow Pharmaceutical, Inc.*, 61 U.S.L.W. 4805.

7.  Where police bungling and/or prosecutorial misconduct resulted in the loss or intentional destruction of exculpatory or potentially exculpatory evidence therein prejudicially affecting defendant's right to due process of law and a fundamentally fair trial.  *See*:  *United States v. Parker*, 72 F.3d 1444; and *Edwards v. Oklahoma*, 429 F.Supp. 668.

8.  It is a violation of the Sixth Amendment notice and jury trial guarantee for a trial court, and (sic) in imposing an enhanced sentence, to assess facts not charged in the indictment, submitted to a jury and proven beyond a reasonable doubt. *See:  Blakely v. Washington* (2004), 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed. 2d 403; and *State v. Foster*, 109 Ohio St. 3d 1, 2006 Ohio 856.

9.  Where 'binary and ex parte sentencing procedures' evident in the record implicated defendant's due process and fundamental fairness rights thereby reducing the resulting attempted sentence to a mere nullity and void as a matter of law.  *See:  State v. Young*, 96 N.E.2d 256; and *Norris v. Schotten*, 146 F.3d 314, 333-336 (6th Cir. 1998).

10.  Where a joinder at trial was so inherently prejudicial to one defendant so as to amount to a denial of due process and fundamental fairness, and the record on its face demonstrates that the resulting and reasonably foreseeable prejudice was so pervasive that a miscarriage of justice did loom, a new trial was

-9-

therefor warranted as a matter of law.  *See:  United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996).[30]

The record here does not show that the State filed a brief in opposition.  On March 26, 2008, the Supreme Court of Ohio denied Martin leave to appeal, dismissing his appeal as not involving any substantial constitutional question.[31]  Martin did not seek a writ of certiorari from the Supreme Court of the United States.[32]

## D.    Federal habeas proceedings

### 1.    *The petition*

On February 12, 2009,[33] Martin, *pro se*, filed the present petition for a writ of habeas corpus under 28 U.S.C. § 2254 in this Court, raising the following ten grounds for relief:

GROUND ONE:  [W][34]here courts are to apply the law as written, and compelling procedural and substantive due process are left unattended, such

---

[30] *Id*. at 219-221.

[31] *Id*. at 259.

[32] ECF # 1 at 2.

[33] *Id*. at 13.  This is the date disclosed on the petition that Martin signed the petition and delivered it to prison authorities for mailing.  As the Sixth Circuit has recognized, the date an incarcerated *pro se* habeas petitioner signed his petition and delivered it to prison authorities for mailing is deemed the date the petition was filed. *Feenin v. Myers*, 110 F. App'x 669, 671 (6th Cir. 2004) (citing *Houston v. Lack*, 487 U.S. 266, 276 (1988)).

[34] Martin has bracketed the initial capital letter of the first word of every ground for relief and statement of supporting facts, although there is no apparent grammatical reason for doing so.  Despite my practice in a report and recommendation of presenting every habeas and state claim by the petitioner exactly as originally written, with any clarifications supplied by me for the sake of the reader clearly indicated, I will, consistent with standard usage, present all further habeas claims without the bracketing of the initial capital letter in the claim.

constitutional error offends basic fairness and implicates the right to a fair trial.[35]

GROUND TWO: Where a 'search warrant'(sic) in a criminal case [] (sic) was/is legally and factually insufficient as a matter of law, the resulting search and seizure offends basic fairness and inherently implicates the Fourth Amendment's prohibition against unreasonable search and seizures. *See*: U.S.C.A. Const. Amends. 4 and 14.[36]

GROUND THREE: Due process rights are prejudicially implicated where required and mandatory findings of fact 'not made'(sic) are artificially imputed to the trial court and the resulting appeal revolves on that basis. *See*: *United States v. King*, 227 F.2d (sic) 732 (6th Cir. 2000); and *Ornelas v. United States*, 517 U.S. 690 (1996).[37]

GROUND FOUR: The due process requirement for clerical filing of official court records and journalization for the purpose of validity is well established, and where as here, a critical and foundational search warrant was/ is patently devoid of filing and journalization by the clerk prior to its execution [such deficiency] renders that warrant a mere nullity and void as a matter of law. *See*: *Hollingsworth v. Barbour* (US) 4 Pet. 466, 7 L.Ed. 922; and, *Tari v.State*, 117 Ohio St. 481.[38]

GROUND FIVE: Due process requires, in a criminal proceeding [at its most primary and fundamental] (sic) concept, that as a crime does not make its doer guilty, a person charge (sic) with crime must be said to have participated in and been a party to such criminal acts or omissions. *See*: *Berger v. United States*, 295 U.S. 78, 88 (1935); and *Carter v. Rafferty*, __ U.S. __ (citation omitted)(sic).[39]

GROUND SIX: Due process and fundamental fairness rights are prejudicially implicated where, as here, a large amount of marijuana was

---

[35] ECF # 1, Addendum at 14.

[36] *Id.* at 15.

[37] *Id.* at 16.

[38] *Id.* at 17-18.

[39] *Id.* at 19.

seized from two different locations, however, a mere fraction of the drugs confiscated one of the two locations were (sic) randomly tested.[40]

GROUND SEVEN:  It is a violation of due process and deprived petitioner [of] his Sixth Amendment right to a fair trial where police and prosecutorial mishandling of exculpatory and/or potentially exculpatory evidence resulted in the intentional or negligent loss or destruction of such critical and probative evidence to petitioner. *See: Brady v. Maryland*, ___ U.S. ___(citation omitted)(sic); and *Bagley v. Lumpkin*, ___ U.S. ___ (citation omitted)(sic).[41]

GROUND EIGHT: The Sixth Amendment 'notice and jury guarantees' (sic) prohibits (sic) a court from imposing an enhanced sentence greater than the statutory authorized maximum penalty predicated of (sic) facts and factfinding not charged in the indictment, submitted to a jury, proven beyond a reasonable doubt or made a matter of stipulation by the offender. *See*: *Blakely v. Washington* (2004), 542 U.S. 296; and *State v. Foster*, 109 Ohio St. 3d 1.[42]

GROUND NINE:  It is well recognized that where 'binary and ex parte sentencing procedures' (sic) evident in the record implicate due process and fundamental fairness rights thereby reducing the resulting attempted sentence to a mere nullity and void as a matter of law, any confinement predicated on such judgment can only be deemed unconstitutional requiring habeas corpus intervention. *See*: *Norris v. Schotten, supra*; (sic) and *State v. Youtz,* 96 N.E.2d 265.[43]

GROUND TEN:  Conviction obtained in violation of the Federal Constitution's right to due process of law and to a fundamentally fair trial where a 'prejudicial joinder' (sic) so inherently infected the trial and proceedings in (sic) unfair prejudice so as to amount to a violation of due process. *See:  United States v. Baker*, 98 F.3d 330, 335 (8th Cir. 1996).[44]

---

[40] *Id*. at 20.

[41] *Id*. at 21.

[42] *Id*. at 22.

[43] *Id*. at 23.

[44] *Id*. at 24.

As noted, in addition to the foregoing claims for relief, Martin's petition also requests an evidentiary hearing and the appointment of counsel.[45]

**2.      *The State's return of the writ***

In the return of the writ, the State analyzed the various claims in the petition under several general rubrics, which are set forth below.

After preliminarily noting that the petition here appears to be timely filed within the one-year limitations period of 28 U.S.C.§ 2244(d)(1)(A),[46] the State initially contends that half of the grounds for relief – claims one, three, four, six and nine – are not cognizable here as they are state law claims having no federal constitutional dimension material to the outcome of Martin's case.[47]   Specifically, the State maintains that these claims involve alleged violations by the Ohio trial court of state procedural rules.  It further contends that any alleged error in a state court's interpretation of its own procedural rules is, however, not a matter for the federal habeas court absent a showing – purportedly not made here – that the state-law violation resulted in a denial of fundamental fairness to Martin.[48]

Next, the State argues that consideration here of Ground Two – which claims that the trial court erred in denying the motion to suppress the results of the search warrant – is barred

---

[45] *Id*. at 26.

[46] ECF # 5 at 8.

[47] *Id.* at 8-9.

[48] *Id*. at 9-10.

-13-

by the Supreme Court's holding in *Stone v. Powell*.[49]  In particular, the State asserts that the holding of *Powell* applied to this case is that because Ohio has an adequate mechanism – a Criminal Rule 12 motion to suppress – for resolving Fourth Amendment claims, and that mechanism was used by Martin in this case, Martin may not now seek federal habeas review of the state court decision to permit the use at his trial of evidence allegedly obtained as a result of an illegal search and seizure.[50]

With respect to grounds six, eight, and ten the State further asserts that these grounds are precluded from review here because of procedural default or waiver.[51]  In that regard, the State observes that:

(1)     as to Ground Six, claiming only a small sample of the confiscated drugs were tested, Martin raised no contemporaneous objection to the testing protocol at trial and the state appeals court cited that lack of contemporaneous objection as a waiver of the claim;[52]

(2)     as concerns Ground Eight, which is a *Blakely* claim to the sentence imposed, once again Martin failed to make a contemporaneous objection, this time at the sentencing, and once again the state appeals court found that the claim was forfeit except for plain error;[53] and

(3)     Ground Ten, which raises the issue of prejudicial joinder, is also procedurally defaulted because Martin did not renew his motion for

---

[49] *Id*. at 10-12, citing *Stone v. Powell*, 428 U.S. 465 (1976).

[50] *Id.* at 11, citing *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982).

[51] *Id*. at 17-22.

[52] *Id*. at 17-19.

[53] *Id*. at 19-21

-14-

severance at the close of the State's case and again at the close of all the evidence, as the state appeals court noted he is required to do in Ohio.[54]

Moreover, the State observes that Martin's procedural defaults and/or waivers here are not excused by any showing of cause for the defaults or prejudice from this Court's failure to reach those issues.[55]  Nor, the State further maintains, has Martin established that these defaults may now be excused by his actual innocence.[56]

Finally, the State contends that Martin's remaining two claims for habeas relief should be denied here on the merits because the state appeals court decision denying these claims in that forum was neither contrary to nor an unreasonable application of clearly established federal law.

**3.    *Martin's traverse***

In his traverse, Martin restricts his reply to contesting the State's position as to non-cognizability in three areas.  Specifically, as to Grounds One and Three, he argues that, while the trial court's denial of his motion to suppress without any findings of fact involved "on its face" the application of a state criminal rule, it actually, in this case, amounted to a denial of due process rights subject to federal habeas review because there was no possibility of intelligent state appellate review when no basis for the trial court's decision appeared of

---

[54] *Id*. at 21.

[55] *Id*. at 21-22.

[56] *Id*. at 22.

-15-

record.[57]  Regarding Ground Two and the search warrant issue, Martin contends that the State's position, which rests on the application of *Stone v. Powell*, is a "'hard-line' view apparently enjoy[ing] some currency in the Fifth and Seven[th] Circuits" that should be rejected here.[58]

He concludes his traverse by relying on his previous arguments as to all other claims for relief.[59]  In particular, I note that those prior positions do not address the procedural defaults alleged by the State in the return of the writ.

## Analysis

### A.     Initial observations and recommendations

Before proceeding to an analysis of the claims for relief, I note the following:

### 1.     *Jurisdiction*

There is no dispute, and my own review supports, that Martin is currently incarcerated by the State as a result of his 2006 conviction and sentence, and that the present petition was timely filed within the one-year limitations period as more fully described earlier.  In addition, I also note that the current grounds for relief appear to have been exhausted in the Ohio courts.  Therefore, I recommend finding that the necessary jurisdictional predicates to federal habeas review have been met in this case.

---

[57] ECF # 8 at 5-7.

[58] *Id*. at 7-10.

[59] *Id*. at 11.

-16-

## 2.    *Appointment of counsel/evidentiary hearing*

As is well-settled, indigent petitioners have no constitutional right to counsel in habeas proceedings.[60] A decision to appoint counsel for a federal habeas petitioner under Rule 8(c) of the Rules Governing Section 2254 Cases is mandatory when an evidentiary hearing is required.  Otherwise such an appointment is at the discretion of the district court if the interest of justice so requires.[61]

Evidentiary hearings, which are provided for by 28 U.S.C. § 2254(e)(2), are required only if:  (1) the petitioner failed to develop the factual basis of his claim in the state court but (2) that failure was not due a lack of due diligence on his part and (3) the facts sought to be developed would establish that, but for the alleged constitutional error, no reasonable factfinder would have found the petitioner guilty of the underlying offense.[62]  Essentially, as the Supreme Court has recognized, under the statute "if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing."[63]

Thus, in general, absent the situation of an evidentiary hearing, federal habeas courts will conclude that the interest of justice supports the appointment of habeas counsel only if,

---

[60] *Murray v. Giarratano*, 492 U.S. 1 (1989); *Cobas v. Burgess*, 306 F.3d 441, 444 (6th Cir. 2002).

[61] Rule 8(c), Rules Governing 2254 Cases in Federal District Courts; *Gilbert v. Barnhart*, 2009 WL 4018271, at *1 (E.D. Mich. Nov. 19, 2009) (citations omitted).

[62] 28 U.S.C. § 2254(e)(2).

[63] *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007).

-17-

given the difficulty of the case and the petitioner's own abilities:  (1) the petitioner could not obtain justice without an attorney, (2) the petitioner could not obtain counsel on his own, and (3) the petitioner would have a reasonable chance of prevailing on his claims with the assistance of counsel.[64]

In this case, I observe first, as will be discussed more fully below, that the claims here require no further factual development.  This is the case in the first instance because a significant number of Martin's grounds for relief are either non-cognizable or procedurally defaulted.  Further, those remaining claims subject to adjudication on the merits are resolvable on the existing record.  Thus, I recommend denying Martin an evidentiary hearing.

As to appointment of counsel, I note first that without an evidentiary hearing, there is no other basis on which to conclude that the interest of justice supports the appointment of counsel here.  Specifically, I observe that the few grounds for relief remaining after the dismissal of all non-cognizable and procedurally defaulted claims are neither novel nor complex, and the facts surrounding these remaining claims have been apparent on the record from the earliest proceedings.  Moreover, I also note that Martin, though indigent and a non-lawyer, has prepared an extensive, well-supported brief in furtherance of his petition[65] and has filed an equally well-supported traverse.  Accordingly, I recommend that Martin's motion for appointment of counsel also be denied.

---

[64] *Mira v. Marshall*, 806 F.2d 636, 638 (6th Cir. 1986); *Shepherd v. Ohio*, 2007 WL 1431898, at *1 (N.D. Ohio May 14, 2007) (Wells, J.) (citation omitted).

[65] The supplemental brief, ECF # 1, Addendum, was 26 pages and cited numerous statutory and case authorities.

-18-

**B.** **Standards of review**

*1.* *AEDPA standard*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[66]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[67]  As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[68] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[69]

---

[66] 28 U.S.C. § 2254(d).

[67] *Williams v. Taylor*, 529 U.S. 362 (2000).

[68] *Id.* at 412.  *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[69] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[70]  Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[71]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[72]

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[73]  Then, the federal court is to review the claim *de novo*.[74]

2.     *Procedural default standard*

Under the doctrine of procedural default, the federal habeas court is precluded from reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its

---

[70] *Williams*, 529 U.S. at 411.

[71] *Id*. at 409.

[72] *Id.* at 405-07.  *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

[73] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[74] *Id.*

merits in state court, either because the petitioner failed to raise it when state remedies were still available or because of some other violation of a state procedural rule.[75]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[76]

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[77]

If a procedural default is established, the default may be overcome if the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged

---

[75] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

[76] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[77] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

-21-

constitutional violation.[78]  In addition, procedural default may also be excused by a showing of actual innocence.[79]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[80]  Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[81]  There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[82]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[83]  In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[84]

---

[78] *Deitz v.Money*, 391 F.3d 804, 808 (6th Cir. 2004).

[79] *Id*.

[80] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[81] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[82] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[83] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[84] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

## C.     Application of standards

Consistent with the formulation adopted by the State in its return of the writ, analysis of Martin's grounds for relief here will be organized by sections pertaining to: (1) non-cognizable claims, (2) procedurally defaulted claims, and (3) claims to be resolved on the merits.

### 1.     *Non-cognizable/otherwise non-reviewable claims*

As discussed, the State analyzed six grounds for relief as non-cognizable or otherwise non-reviewable claims in a federal habeas action.  As formulated by the State, three of these non-reviewable claims essentially consist of claims relating to alleged Fourth Amendment violations and those springing from asserted violations of state law, with the rest arising under different contexts.

As will be discussed below, I will first recommend that four grounds for relief – Ground Two plus three of the purported violations of state law arising in connection with the motion to suppress (Grounds One, Three, and Four) – be resolved under *Stone v. Powell* because those supposed errors occurred as part of the state court's adjudication of the Fourth Amendment claims.  Then, I will further recommend:  (1) dismissing Ground Nine as non-cognizable as a matter of state law; (2) dismissing Grounds Six, Eight, and Ten as procedurally defaulted or waived; and (3) denying Grounds Five and Seven on the merits as the state court decision in those regards was neither an unreasonable application of, nor contrary to, clearly established federal law.

-23-

a.    *The four search warrant claims should be dismissed as non-reviewable under Stone v. Powell.*

The following four claims for relief arise from Martin's motion to suppress the results

of a search filed in the state trial court, and the appeal from that motion's denial and should

be dismissed:

> Ground One – contends that the trial court erred in making findings of fact in connection with its denial of the motion to suppress;[85]
>
> Ground Two – argues that a search warrant is invalid, as is any resulting search, when the warrant was based on unverified information and not supported by sufficient evidence of probable cause;[86]
>
> Ground Three – claims that Martin's due process rights were violated when the state appellate court alleged imputed factual findings to the trial court in the course of deciding the appeal of the denial of the motion to suppress;[87]
>
> Ground Four – asserts that it was error for the search warrant to be executed before being filed or journalized;[88]

The State contends here that Grounds One, Three, and Four should be dismissed as

non-cognizable for involving rulings as to matters of state law,[89] and also argues, under the

Supreme Court's holding in *Stone*, that Martin may not obtain federal habeas relief under

Ground Two on the grounds that evidence obtained from an allegedly unconstitutional search

was introduced at his trial because Ohio had an adequate, functioning procedural mechanism

---

[85] ECF # 1, Addendum at 14-15.

[86] *Id.*, at 15-16.

[87] *Id.*, at 16-17.

[88] *Id.*, at 17-18.

[89] ECF # 5 at 9-10.

-24-

for adjudicating that claim. As noted above, I will recommend that all four grounds for relief be dismissed under *Stone* because they all arise from Martin's attempt, by way of the motion to dismiss, to invalidate the search warrant and exclude the results of the search from trial.

I initially observe that, although Martin, in his traverse, attempts to argue otherwise,[90] *Stone* remains good law, particularly in the Sixth Circuit, fully applicable to the petitioner's claim.[91] *Stone* holds that "where the State has provided an opportunity for full and fair litigation of a Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus relief on the ground that evidence obtained in an unconstitutional search and seizure was introduced at trial."[92] Thus, as the Sixth Circuit recently stated: "Ordinarily, [in light of *Stone*], we do not recognize Fourth Amendment claims in Section 2254 actions if the state proceedings provided a full and fair opportunity [to petitioner] to litigate that claim."[93]

As formulated by the Sixth Circuit, habeas courts are to apply a two-step inquiry in determining whether a petitioner had a "full and fair" opportunity to litigate his Fourth Amendment claim in the state courts as required by *Stone*:

---

[90] *See*, ECF # 8 at 7-11.

[91] *Mitchell v. Sheldon*, 2009 WL 1911841, at **2-3 (N.D. Ohio June 30, 2009) (Gaughan, J.) "No federal appeals court has found that *Stone v. Powell* is no longer good law. The Sixth Circuit, in particular, has continued to apply it since the AEDPA's 1996 enactment."

[92] *Stone*, 428 U.S. at 494 (footnote omitted).

[93] *Lawrence v. 48th District Court*, 560 F.3d 475, 483 at n.7 (6th Cir. 2009) (citing *Stone*, 428 U.S. at 489-90).

First, the 'court must determine whether the state procedural mechanism, in the abstract, presents the opportunity to raise a fourth amendment claim.  Second, the court must determine whether presentation of that claim was in fact frustrated because of a failure of that mechanism.'[94]

In this case, under Ohio law, Martin filed a pretrial motion to suppress the evidence obtained as a result of the search warrant, which motion was denied.  He then appealed that denial and was unsuccessful.

As to whether the Ohio procedure of a motion to suppress followed by an appeal satisfies the first part of the test set out by the Sixth Circuit, I recommend finding as Judge Zouhary very recently found in a similar case:

> Here, it is clear that Ohio's procedures satisfy the first inquiry.  Ohio Criminal Rule 12(C)(3) provides a defendant the opportunity to raise pretrial motions to suppress illegally obtained evidence.  Additionally, a defendant may directly appeal the denial of a suppression motion.  *See* Ohio App. Rules 3(A) & 5(A).  Thus, Ohio has procedures which properly 'afford [] a litigant an opportunity to raise his claim in a fact-finding hearing and on direct appeal of an unfavorable decision.'[95]

As to the second prong of the relevant inquiry – whether operation of the state procedural mechanism was frustrated in this instance – I note that Martin now contends in Grounds One, Three, and Four, as did the petitioner in *Mitchell*, that in his case "the state court [adjudicating the motion to suppress] made errors resulting in improper rulings."[96]  In

---

[94] *Machacek v. Hofbauer*, 213 F.3d 947, 952 (6th Cir. 2000) (quoting *Riley v. Gray*, 674 F.2d 522, 526 (6th Cir. 1982)).

[95] *Blevins v. Rogers*, 2010 WL 649097, at *3 (N.D. Ohio Feb. 19, 2010) (Zouhary, J.) (citations omitted); *see also*, *Mitchell*, 2009 WL 1911841, at *3 (citation omitted).

[96] *Mitchell*, 2009 WL 1911841, at *3.

-26-

that regard, however, I further observe, as did Judge Gaughan in *Mitchell*, that merely asserting that the state court made errors in its application of the procedure governing Fourth Amendment claims does not entitle a petitioner to federal habeas relief.[97] In fact, as was noted by this Court in *Blevins*, when an Ohio petitioner, as in Martin's case, is able to present his Fourth Amendment claims to the trial court in a motion to suppress, and then to the appellate court, he "'has received all the process he [i]s due'" under *Stone*,[98] rendering those claims subject to dismissal by the federal court.

In addition to recommending that Martin's claims under these four grounds for relief be dismissed as barred from review here by the foregoing principles of *Stone*, I also note, contrary to his assertions that the appeals court here was particularly careful to examine the entire suppression hearing before the trial judge for any evidence that Martin's claims in the original motion to suppress had merit or that the trial court acted improperly or deficiently in denying the motion.

In that regard, I observe initially that, contrary to imputing any findings to the trial court, the state appeals court conducted its own extensive review of the suppression hearing record so as to state its own findings of record.[99] Such a detailed and comprehensive review on the appellate record directly refutes any claim in Ground Three that the appeals court

---

[97] *Id.*, citing *Thornhill v. Piazza*, 2009 WL 1406699 (W.D. Pa. May 19, 2009) (citation omitted). "Whether or not a state court incorrectly decided a petitioner's Fourth Amendment claim is immaterial to the full and fair opportunity analysis."

[98] *Blevins*, 2010 WL 649097, at *3, quoting *Machacek*, 213 F.3d at 952.

[99] *See*, ECF # 5, Attachment (state record) at 199-203.

needed to impute findings to the trial court that were not made at that court to uphold the denial of the motion to suppress, thus denying Martin a fair review of the claims in that motion.

Further, and as to the arguments in Ground One, the Ohio appeals court concluded from its review of the suppression hearing record that although there was no evidence in the police affidavit supporting the issuance of the search warrant to demonstrate that the officer had prior knowledge of the veracity of the confidential informant's information, that information was independently corroborated in multiple ways to the trial court at the suppression hearing by information independently developed by the police investigation and from other evidence.[100]  In fact, the appellate court noted explicitly that, even if the information in the affidavit challenged by Martin as not supported by were disregarded, "the remainder of the information included in the affidavit provided the issuing judge a substantial basis on which to conclude that probable cause existed to search the Gardenview premises."[101]  Thus, the record developed at the appellate court refutes Martin's claim in Ground One that the warrant was based on insufficient valid evidence of probable cause.

Finally, as to the claim in Ground Four, I note that the state appeals court directly found under Ohio law that the mere failure to file and journalize a search warrant prior to its execution does not render the resulting search invalid unless:  (1) the warrant papers themselves never existed in the first instance, or (2) there was never sufficient cause for the

---

[100] *Id.*, at 201.

[101] *Id.*, at 203.

search – both factors which the appeals court determined did not apply in this case.[102]  Thus, Martin's Fourth Ground here was expressly considered as part of Ohio's review procedure for Fourth Amendment claims and rejected as a matter of Ohio law.[103]

Accordingly, initially and most importantly because (1) Martin received at his suppression hearing and on the appeal therefrom "all the process he was due" from Ohio under *Stone*, thus precluding this Court from proceeding to consider the merits of Grounds One through Four; and further because (2) the review of those claims that Martin actually received from the Ohio appeals court was thorough and detailed in addressing and denying each of those current grounds for relief related to the motion to suppress, I recommend dismissing Grounds One, Two, Three, and Four as barred from review by this Court under *Stone v. Powell.*

b.    *Non-cognizable state-law claim*

As is well-recognized, to the extent a habeas ground for relief is based on merely a purported error of state law, that ground has failed to state a claim upon which federal habeas relief may be granted.[104]  Error in the application of state law becomes a basis for federal habeas relief only insofar as such an error renders the underlying proceeding so fundamentally unfair as to deprive the petitioner of due process.[105]  Lack of fundamental

---

[102] *Id.*

[103] *Id.*

[104] *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990).

[105] *Estelle v. McGuire*, 502 U.S. 62, 69-70 (1991).

-29-

fairness is understood to be defined "very narrowly,"[106] as only those actions that violate those "fundamental conceptions of justice which lie at the base of our civil and political institutions."[107]

Here, in Ground Nine, Martin posits that he was deprived of his right to be present at all stages of his criminal proceeding when the trial court issued a *nunc pro tunc* order, without input from or prior notice to Martin, correcting an error in the original filing of the jury's verdict.[108] Essentially, as the state appeals court observed, Martin argued in that forum that there was in impermissible change in the jury's verdict on the charge of drug trafficking when the trial court corrected the original entry of the verdict – which did not indicate that Martin had been acquitted of the accompanying firearm specification – with a revised entry that correctly reflected the acquittal on that specification.[109]

The issue of whether the trial court complied in all respects with Ohio law as to entry of *nunc pro tunc* orders is, in the first instance, plainly a matter of state law not cognizable by this Court unless the state court's action violated some fundamental conception of justice lying at the heart of our civil justice system.  In that regard,  I then note that since:  (1) the correction here involved the state court actually entering an *acquittal* as to a firearm

---

[106] *Dowling v. United States*, 493 U.S. 342, 352 (1990).

[107] *Mooney v. Holohan*, 294 U.S. 103, 112 (1935).

[108] *See*, ECF # 1, Addendum at 23-24; *see also*, ECF # 5, Attachment (state appeals court decision) at 211.

[109] *Id.*

specification that had previously been erroneously left out of the recorded verdict, and

(2) there is no claim that this correction to the record was itself any kind of mistake or in

error, it is hard to imagine what concept of justice is offended by this action.

Therefore, I recommend that Ground Nine here be dismissed as a non-cognizable

state law matter that does not implicate fundamental fairness.

c.      *Procedurally defaulted claims*

The State contends that the following three grounds are procedurally defaulted:

Ground Six – claiming that it was a denial of due process that only a fraction
of all the drugs seized was randomly tested;[110]

Ground Eight – arguing that it was a *Blakely* violation for the trial court to
sentence Martin on the basis of facts not found by the jury or admitted to by
the defendant;[111] and

Ground Ten – asserting that Martin was denied due process when he was tried
together with a co-defendant.[112]

Specifically, the State maintains as to each of these grounds that:

(1)     because Martin did not, in violation of Ohio's contemporaneous
objection rule, object to the random sample size when the evidence was
introduced, he was found by the appeals court to have waived the
argument in Ground Six for appeal and so it is precluded from
consideration in this Court as procedurally defaulted;[113]

---

[110] ECF # 1, Addendum at 20-21.

[111] *Id.*, at 22-23.

[112] *Id.*, at 24-25.

[113] ECF # 5 at 17-19.

(2)     because Martin, likewise, did not assert his *Blakely* claim of Ground Eight at the time of sentencing, the state appeals court also concluded that he had waived that claim on appeal, and it is procedurally defaulted here;[114] and

(3)     because the state appeals court found that Martin had waived his joinder argument of Ground Ten by not renewing it, as required by Ohio law, at the close of the State's case and again at the close of evidence, he is also barred by procedural default from raising it here.[115]

As noted earlier, Martin did not respond in his traverse to the State's arguments of procedural default as to any of these claims, offering neither a cause and prejudice analysis as to any claim nor an assertion of actual innocence.  With that framework, I will address each of the claimed procedural defaults sequentially.

Ground Six claims due process was violated when only a small sample of the marijuana seized was tested.[116]  That claim was presented to the Ohio appeals court, which found that Martin did not offer a contemporaneous objection at trial to the drug testing.  In fact, the court noted, at trial Martin stipulated to the drug testing results.[117]  The appellate opinion further noted that in Ohio the "failure to interpose a timely objection at a time when the trial court can correct an error constitutes a waiver of any objection to the admissibility of the evidence," leaving the appeals court with only a plain error review.[118]

---

[114] *Id.* at 19-21.

[115] *Id.* at 21.

[116] ECF # 1, Addendum at 20-21.

[117] ECF # 5, Attachment (state record) at 207-208 (appeals court opinion).

[118] *Id.*

As the State notes, the appeals court here initially noted that the issue had been waived because of Martin's failure to follow Ohio's long-standing contemporaneous objection rule.[119]  The State further observed that a state court's plain error analysis does not convert a procedurally defaulted claim into one reviewable by the federal habeas court.[120]  Thus, because Ohio's contemporaneous objection rule is recognized as an adequate and independent state law ground sufficient to bar federal habeas review, and further because Martin's failure to observe that rule was relied on by the state appeals court in determining that Martin's claim was waived, Martin's sixth ground for relief here is procedurally defaulted.[121]

On review, I initially recommend finding that the state appellate court's decision satisfies the test for establishing a procedural default as to Ground Six as that test was set forth earlier.  I further recommend finding that nothing of record indicates that such default has been excused by cause and prejudice, or by actual innocence.  Therefore, I finally recommend that Ground Six be dismissed as procedurally defaulted.

Ground Eight is a *Blakely* claim concerning the sentence imposed on Martin.[122]  This claim was also presented on appeal to the Ohio court which – similar to the preceding claim

---

[119] ECF # 5 at 17-18.

[120] *Id.* at 19, citing *Gulertekin v. Tinnelman-Cooper*, 340 F.3d 415, 424 (6th Cir. 2003); *Scott v. Mitchell*, 209 F.3d 854 (6th Cir. 2000).

[121] *Id.*

[122] ECF # 1, Addendum at 22-23.

– found that Martin had forfeited the issue by not raising any objection to his sentence at the time the sentence was pronounced,[123] although it concluded the sentence was proper under a plain error analysis.[124]  As with the prior claim, the State notes that the Ohio appeals court relied on Martin's failure to observe Ohio's contemporaneous objection rule as the basis for not reviewing this claim on its merits.[125]  It further observes, as it did before, that plain error consideration does not convert a forfeit claim into one now subject to federal habeas review.[126]

As concerns this ground for relief, I also initially recommend, as I did previously, that the Ohio appeals court decision be found to establish a procedural default on this claim under the applicable test.  I also further recommend finding that no excuse for such a default is present here.  Thus, I recommend that Ground Eight be dismissed as procedurally defaulted.

In Ground Ten Martin contends that he was denied due process when the trial court denied his motion for severance and he was tried together with a co-defendant.[127]  This claim, as with the previous two considered in this section, was presented to the state appeals court which found that review in the Ohio court was barred because "Martin did not renew his

---

[123] ECF # 5, Attachment at 210-11.

[124] *Id.*, at 211.

[125] ECF # 5 at 20.

[126] *Id.*

[127] ECF # 1, Addendum at 24-25.

-34-

motion [for severance] at the close of the State's case or at the close of all the evidence."[128]
The court found that, according to Ohio law, "[a] defendant waives any claim of error concerning joinder if the defendant fails to renew an objection at the close of the State's case or the conclusion of all the evidence."[129] After establishing that Martin had waived his claim, the Ohio court then conducted an alternative analysis under the hypothesis that Martin has properly preserved his joinder objection, and concluded that no prejudice from the joinder was established in this case.[130] As with the other procedural default claims, the State now contends that this ground for relief is also procedurally defaulted.[131]

Upon review, I recommend that the State's position be adopted. Martin did not observe Ohio's rule as to objections to joinder at trial, and the Ohio appeals court, therefore, found this claim to have been waived. As before, I also recommend finding that the elements of a procedural default have been established as to this claim[132] and that no excuse for such default has been established. Thus, I recommend that Ground Ten be dismissed as procedurally defaulted.

---

[128] ECF # 5, Attachment at 212.

[129] *Id.* (citation omitted).

[130] *Id.* at 212-13.

[131] ECF # 5 at 21.

[132] *See, Boyd v. Money*, 2006 WL 1644534, at **7-8 (N.D. Ohio June 13, 2006) (Wells, J.) (finding that in Ohio the failure to timely object to joinder qualifies as a procedural default on the basis of Ohio's long-standing contemporaneous objection rule).

d.      *Ground Five – insufficiency of the evidence – should be denied.*

In Ground Five, Martin contends that, because he was not the owner of the home where a portion of the drugs were found, and because someone else was driving Martin's truck when some of the drugs were found in the truck, there was insufficient evidence to convict him of possessing and trafficking in those drugs.[133]  The State argues that the Ohio appellate court correctly analyzed this claim under the clearly established federal law of *Jackson v. Virginia*[134] and then concluded, under the rubric set forth in *Jackson* of viewing the evidence in a light most favorable to the prosecution, that there was sufficient evidence to convict Martin.[135]  Martin did not offer any new arguments as to this claim in his traverse.[136]

As to this ground for relief, I note first that the State is correct as to applicable federal law for this claim.  *Jackson* sets forth the clearly established federal law test for evaluating claims of insufficiency of the evidence as follows:

> Whether, after viewing the evidence in light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[137]

---

[133] ECF # 1, Addendum at 19-20.

[134] *Jackson v. Virginia*, 443 U.S. 307 (1979).

[135] ECF # 5 at 26-30.

[136] *See*, ECF # 8 at 11.

[137] *Jackson*, 443 U.S. at 319.

As the *Jackson* court emphasized, this rule does not envision that the reviewing court will sit as an independent trier of fact but, rather, contemplates that such a court will view all the evidence in the light most favorable to the prosecution and draw every reasonable inference from that evidence in the government's favor.[138]  It also requires the reviewing court to consider both circumstantial as well as direct evidence under the "light most favorable to the prosecution" rule.[139]  In a decision relied on by the appeals court in this case, Ohio has explicitly incorporated the standard in *Jackson* into Ohio law.[140]

On habeas review by the federal court, the test in *Jackson* does not permit the federal court to make its own determination of guilt or innocence; rather, the standard gives full play to the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to the ultimate facts.[141]

Thus, as the Sixth Circuit has observed, when reviewing a state court decision as to the sufficiency of the evidence under *Jackson* in a habeas matter to determine if that decision was "objectively unreasonable," the reviewing federal court must engage in a two-step analysis.  First, the court must ask, using the *Jackson* test, whether there was sufficient

---

[138] *Id.*

[139] *Id.* at 324-25.

[140] *See*, ECF # 5, Attachment at 204-05 (citing *State v. Jenks*, 61 Ohio St. 3d 259, 574 N.E.2d 492 at ¶ 2 of the syllabus (1991) (superseded on other grounds by Constitutional Amendment as stated in *State v. Smith*, 80 Ohio St. 3d 89, 684 N.E.2d 668 (1997)).  This paragraph of the syllabus explicitly cites *Jackson* and indicates that its standard for determining sufficiency of the evidence is followed in Ohio.

[141] *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993).

-37-

evidence at trial to convict the petitioner.  The federal habeas court's inquiry ends here if it determines that there was sufficient evidence to convict, since, by definition, the state court decision in that regard would necessarily be a reasonable application of clearly established federal law.  If, however, the federal court finds that there was not sufficient evidence at trial to convict the petitioner, the habeas court must then still proceed to the next step and ask whether the state court decision that there was sufficient evidence was unreasonable.[142]

Here, Martin argued to the Ohio appeals court that there was insufficient evidence to support his conviction for possession and trafficking in drugs for three reasons:  (1) the drugs recovered from Martin's truck were illegally seized and so should not have been introduced; (2) he was not in the truck when it was stopped and so ownership of any drugs located there cannot be imputed to him; and (3) the drugs recovered from the truck were intermingled with drugs found at the house, again making it impossible to assign ownership of the drugs to Martin.[143]

In analyzing the evidence under the first step of *Saxton*, I observe initially that Martin's first objection – that the drugs were illegally seized – is a Fourth Amendment claim that, under *Stone*, is a matter for the Ohio courts and cannot here be the basis for the writ if, as was discussed, Ohio has a mechanism for hearing that claim that was not frustrated in its operation.

---

[142] *Saxton v. Sheets*, 547 F.3d 597, 602 (6th Cir. 2008).

[143] ECF # 5, Attachment at 205.

Martin's second contention in this regard is that though he did own the truck, he was not inside the truck when the drugs were seized, rendering it allegedly impossible to connect those drugs with him.  He also asserts that the drugs from the truck may have been intermingled with those from the house, making the drugs themselves insufficient evidence that he owned them or was trafficking in them.

In fact, the evidence at trial, as recounted by the appeals court, was that:  (1) police had physically observed drugs being loaded into Martin's truck from the house at the time Martin was in the basement drug lab; (2) police then arranged to have the truck stopped, at which point they searched the car pursuant to a valid warrant and found drugs inside those same boxes they observed immediately prior to the stop being loaded into the truck from the house;  and (3) Martin was very shortly thereafter arrested in the basement of the house from which the drugs had come, in the "midst of the [drug] packaging materials and wearing latex gloves."[144]  The appeals court also found on their review of the record below that there was "no evidence that drugs or evidence seized in the house and in the truck were intermingled."

In reviewing this evidence under the standard of *Jackson*, I recommend finding that, viewing all direct and circumstantial evidence in the light most favorable to the prosecution, that there was sufficient evidence for a trier of fact to find that Martin possessed and was trafficking in the drugs seized in the truck and at the house in the amount specified in the indictment, as well as one count of possession of criminal tools.

---

[144] *Id*. at 205-07.

As to possession and trafficking, the evidence is clear that Martin owned the truck that was in transit from the house containing a large amount of drugs in packages prepared for sale inside the house where Martin was found. Martin was present in the house in the midst of a virtual drug workshop – described earlier here by the appeals court as containing several tables with large blocks of compressed marijuana in various stages of being broken down for repackaging and sale, two scales, "dozens of boxes" of plastic freezer bags for use in selling drugs, a bag of marijuana discard, air fresheners and latex gloves.[145]  Indeed, Martin himself was arrested "in the midst of the [drug] packaging materials wearing latex gloves."[146] Moreover, as the appeals court observed, the evidence showed that the amount of the drugs inside the house alone was more than 20,000 grams, or fully sufficient to establish the amount elements in the crimes for which Martin was charged.

Thus, because I have recommended finding that there was sufficient evidence for the convictions here, there is no need to further review the state court decision which also found sufficient evidence.  Ground Five should, therefore, be denied.

e.      *Ground Seven – alleging destruction of evidence – should be denied.*

In this ground for relief, Martin asserts that he was denied due process when the latex gloves he was wearing when arrested were not preserved as evidence by the State.[147]  Martin claims, as he did to the state appeals court, that police purposefully lost or destroyed the latex

---

[145] *See*, *id.* at 195-97.

[146] *Id.* at 207.

[147] ECF # 1, Addendum at 21-22.

gloves the prosecution claims he was wearing when arrested, and that, if the gloves could be produced, Martin could test them and prove that he never wore them.[148]

The Ohio appellate court, relying on an Ohio decision[149] that was in turn grounded on a United States Supreme Court decision,[150] initially stated the applicable rule to be that a constitutional violation for the destruction or withholding of exculpatory evidence occurs only when that evidence is material to the guilt of the defendant based on the totality of the record, and where there is a reasonable likelihood that the destroyed, lost, or withheld evidence would have affected the outcome of the trial.[151]

It is clear that the Constitution protects a defendant against the government's failure to preserve "materially exculpatory" evidence for trial.[152]  For evidence to fit within this standard, it must both possess exculpatory value that was known before the evidence's destruction and the defendant must be unable to obtain comparable evidence by other reasonably available means.[153]  The destruction of materially exculpatory evidence violates a defendant's right to due process regardless of whether the government acted in bad faith.[154]

---

[148] *See*, ECF # 5, Attachment at 209.

[149] *State v. Johnston*, 39 Ohio St. 3d 48, 529 N.E.2d 898 (1988).

[150] *United States v. Bagley*, 473 U.S. 667 (1985).

[151] ECF # 5, Attachment at 210.

[152] *California v. Trombetta*, 467 U.S. 479, 488-89 (1984).

[153] *Id.*

[154] *Id.* at 488.

However, as the Supreme Court held in *Arizona v. Youngblood*,[155] "the Due Process Clause requires a different result when we deal with the failure of the State to preserve evidentiary material of which no more can be said than that [such evidentiary material] could have been subjected to tests, the results of which might have exonerated the defendant."[156] In those circumstances, the government does not have "an undifferentiated and absolute duty to retain and preserve all material that might be of conceivable evidentiary significance in a particular prosecution."[157]  Nonetheless, for the failure of the government to preserve merely potentially useful evidentiary material to constitute a denial of due process, the criminal defendant must make an actual showing of bad faith on the part of the government in connection with the failure to preserve; which showing must rest on establishing that the government had actual knowledge at the time the evidentiary material was lost or destroyed of its exculpatory value.[158]

Here, although the state appeals court did not directly identify the correct governing legal principle applicable to this issue, I recommend finding that the Ohio court did properly deny this claim in a decision that is not contrary to the clearly established federal law set forth above.  In particular, I note first that this case plainly arises under the *Youngblood* standard for potentially exculpatory evidence since, as Martin concedes, the gloves

---

[155] *Arizona v. Youngblood*, 488 U.S.51 (1988).

[156] *Id*. at 57.

[157] *Id*. at 58.

[158] *Id*. at 56 n.8; *United States v. Wright*, 260 F.3d 568, 571 (6th Cir. 2001).

themselves would need to first be tested to establish that Martin was not wearing them in order for the test – not the gloves – to have any possible exculpatory value.  Accordingly, as evidence that is only potentially exculpatory to some degree, there is no absolute requirement on the government that it be preserved.  A constitutional violation for the destruction or loss of the gloves, then, rests in the first instance on a showing that the government had actual knowledge before the gloves were lost or destroyed of any such exculpatory value.  Since there is no evidence whatsoever anywhere in the state record that the government had actual knowledge at the time the latex gloves were lost or destroyed that the gloves had any potentially exculpatory value to Martin, there can here be no basis for concluding that due process was violated by the loss or destruction of the gloves.[159]

Therefore, for the above reasons, I recommend denying Ground Seven of the present petition because the decision of the state appeals court was not contrary to the applicable clearly established law of *Youngblood*.

## Conclusion

For the foregoing reasons, I recommend that the petition of Richard Martin for a writ of habeas corpus should be dismissed in part and denied in part as more fully set forth above.

Dated:  March 31, 2010                        s/ William H. Baughman, Jr.
                                              United States Magistrate Judge

---

[159] *See*, *Cal v. Kontah*, 2008 WL 4560782, at *9 (N.D. Ohio Oct. 8, 2008) (Katz, J.); *Treesh v. Bagley*, 2007 WL 1039081, at *36 (N.D. Ohio Mar. 31, 2007) (Oliver, J.).

**Objections**

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice.  Failure to file objections within the specified time waives the right to appeal the District Court's order.[160]

---

[160] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).